Good morning, everyone. This is the time and place set for argument in the case of Ochoa v. Davis. Counsel for appellant, please proceed. Good morning, Your Honors. May it please the Court. Pamela Gomez, on behalf of Mr. Sergio Ochoa, the only one of his cohorts against whom the State sought the death penalty and whose prosecution is tacked against him by misleading the prospective jurors as to what California law required. I would like to reserve seven minutes for rebuttal, if I may. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, Your Honor. And unless the panel has any questions, I would like to start by looking at the State's improper exclusion of prospective juror Gertrude W. Against this factual background, it's important to remember that unlike what the California Supreme Court found below, with its plenity and its progeny, it's a limit on the State's power to excuse prospective jurors for cause in capital trials. Counsel, is that a certified issue? Yes, Your Honor. It's certified issue number one, and the companion certified issue of IAC of trial counsel. The power to exclude prospective jurors based on cause does not extend beyond the State's legitimate power to excuse jurors who will frustrate the implementation of a constitutional capital sentencing scheme. It does not extend, as the prosecution here did, to excluding jurors who, and I quote, would give her an uphill battle in a capital case. Counsel, which juror are you? I'm focusing right now, Your Honor, on Juror Gertrude W. in the first group of panel. She was amongst the first. She was actually in the first group that the court questioned. Here, because the prosecution diluted the line between what California capital sentencing scheme required and jurors and who were not eligible for the death penalty, the prosecution did not carry its burden to showing that the jurors were substantially impaired to perform their duty in this capital case. It's also important to remember that, unlike what the California Supreme Court did below, these jurors in the questionnaires that were provided by the court were not substantially impaired. To the contrary, they actually showed a likelihood or an inclination towards the death penalty and to have an open mind as to what punishment would entail. So, counsel, your argument is that the prosecutor misled them and together disqualified the answer? Yes, Your Honor. Okay, so what case are you relying upon to support your proposition that the prosecutor giving misleading questions supports your claim? Your Honor, from the inception of Witherspoon and its progeny all the way to… Witherspoon, your strongest case? No, Your Honor, all its progeny, all the way to Utrecht v. Brown. Like, what is your single strongest case that most closely mirrors the facts of this case? Utrecht v. Brown, Your Honor, recognizes and reemphasizes, number one, that the burden is on the prosecution to carry its burden to show that the jurors are substantially impaired and that they have to be substantially impaired in light of the sentencing scheme which the defendant faces. In Utrecht v. Brown, for example, juror number Z was removed properly for cause because he mistook what Washington law required. Because he kept on reminding or thinking that the defendant would be eligible for parole and therefore that would influence his decision as to whether or not to sentence for the death. So counsel, we're here on habeas, correct? Correct, Your Honor. So the California courts will have to have applied, misapplied, clearly established Supreme Court law. Correct, Your Honor. So your view is that Utrecht is the clearly established Supreme Court law? Your Honor, the whole entire project, all the way to Utrecht. But we have to identify. Right. We're right in our opinion. We have to identify what the clearly established law is that the California Supreme Court was compelled to apply. So in your argument, what is the clearly established Supreme Court case, case, singular, that the California court was required to apply? Your Honor, wit. Wit. With wit as well as Adams v. Texas. It is clear that the Supreme Court has created with its progeny as a limit on the state's power to exclude jurors. And that exclusion, again, has to be faced. The state has the power to exclude jurors who would frustrate the state's interest in applying a capital sentencing procedure. Therefore, the states have to follow their own law in keeping out jurors who will frustrate their interest. Counsel, can I ask you? I mean, there's a little bit of a tension there, though, because under EPA, we can't grant relief based on a violation of state law. So there's some sort of tension, I think, between the idea that the question I've got with respect to what you're talking about, especially with regard to Gertrude. As I read wit, it says you have to prevent or that you can exclude somebody for cause if it would prevent or substantially impair the performance of their duties as a juror with their instructions in accordance with their instructions in their oath. And it seems to me like your argument is, well, the hypothetical that he gave wasn't actually, didn't match, that the prosecution gave didn't match the circumstances of this case. So the question I've got is, why does it have to, if the hypothetical is actually an accurate reflection, and I'm not sure you agree with that, but let's assume for a second that it was an accurate reflection of California law, why does it matter if the hypothetical matches the circumstances of this case? Because if you give a hypothetical and it's an accurate reflection of the law, but a juror says I couldn't do the death penalty in that case, wouldn't that tell you under wit that they could not perform their duties? It seems to me. Your Honor, two things. Although grounded in the Sixth Amendment, wit and its progeny is grounded on the Fourteenth Amendment. As the Supreme Court recognized in wit, one of the reasons why, and in Adams v. Texas, one of the reasons why the Supreme Court changed the text to substantially impairment is because it recognized that to narrowly tailor their sentencing scheme. Therefore, they changed the law, the standard changed. Wit itself says that what creates the substantial impairment has to be a state law. It's not that the claim is based on state law. It is that the framework in which the jurors have to perform is actually guided by state law. So, okay, I think that maybe responds to the first thing I said. The second one, though, is sort of what I'm really particularly interested in. How could, assuming again, I don't think you agree with this, but assuming that the hypothetical was an accurate reflection of state law, but was not necessarily an accurate reflection of the facts in this case, but it was an accurate reflection of something you would be eligible for the death penalty, and you ask somebody about that and the juror says, no, I couldn't give the death penalty in that circumstance. Why couldn't you strike them for cause? Because that would show that they were substantially impaired in their ability to live up to the instructions that they required under state law. Your Honor, the problem with this hypothetical is that it did not accurately reflect. Okay, so that's why I'm asking this question. So would you agree that we have to conclude that it doesn't accurately reflect state law in order for you to win? In other words, if it accurately reflects state law, but we agree with you that it's not the same exact facts under the hypothetical that I believe the prosecutor was giving to the first or second group, that's not enough. That's not enough. Well, it's compatible with that. It was not an accurate reflection of the state law, and then it misled the jurors as to what the law required. But it turns on the fact that it's not an accurate reflection of state law. Not necessarily, Your Honor. It turns also on the fact that it misled the jurors. The prosecutor herself, at this point, even though she has the burden to substantially establish the removal for cause, by inserting ambiguity, she herself could not carry that burden. She was not interested in rejecting jurors who would be substantially impaired. Now, so you argue that an accurate statement of state law could also result in a constitutional violation? Your Honor, that's not the case. That's not completely the case here. I'm sorry, that's what you said. Even if it is an accurate statement of state law, if it misleads the jury, it still amounts to a constitutional violation. And that's the problem with some of the hypotheticals. As the California Supreme Court itself found in a subsequent case in People v. Armstrong, where the case was so close to the border of what was eligible or not eligible for the death penalty, that the prosecution couldn't carry its burden substantially impaired. Counsel, was there an objection made to the hypothetical by the counsel? Your Honor, there was an objection at the bar where the prosecutor was asking for that juror to be removed by cause. So in the record, can we go to confirm that there was an objection to the hypothetical? There was an objection in order to the remover of death verdict. But my question was, was there an objection to the hypothetical? Your Honor, subsequently, after a couple of times that the prosecutor brought that up, the trial counsel said, yes, Your Honor, I should have objected. But there was no contemporaneous objection? Not when the prosecution was speaking and misleading the jurors, but certainly at bar when the prosecutor sought to exclude that potential juror. Does that make a difference to us, whether or not the objection was contemporaneous? Your Honor, not, and that would actually be with the case with itself. When the Supreme Court considered whether or not there had been a waiver because counsel had not objected, and the Supreme Court said, no, certainly we're not considering this to be a waiver because, again, under state law, that was not a waiver. And that is the case in this case. What did the California Supreme Court say about that in this case, not the case you're talking about? Right. Subsequently. Your Honor, in this case, the California Supreme Court reached the merits of the decision. It did not find the claim procedurally barred. And furthermore, when it reached a claim, it objectively and reasonably applied, clearly established federal. Well, the difficulty is that we generally defer to the state court interpretation of state law. So how can we say that this was not in accordance with state law if the state court said that it was? Your Honor, because there are cases where the lower courts or the state courts do get their own law wrong. That was the case, again, of Davis v. Georgia, and that was the case of Adams v. Texas. It's not the first time where a Supreme Court clearly established federal law says. But are you saying there's a case where the Supreme Court has said that the state court's interpretation of state law can be reversed by the federal court? Again, Your Honor, we're not talking about a state law. We're talking about a constitutionally valid capital sentencing scheme. The Supreme Court said that California's capital sentencing scheme was valid into labor. But this precise point we're talking about on the hypotheticals is premised on whether or not the hypothetical was properly reflective of state law. People v. Your Honor. California's Supreme Court said that it's properly reflective of state law. Aren't we bound by the California Supreme Court's interpretation of its own state law? Your Honor, and that's people v. Anderson. In people v. Anderson, the California Supreme Court found that when it comes to the multiple murder special circumstance, intent to kill is not an element unless it becomes a case of an either and a better. I understand you're relying on that, but in this particular case, we don't have the California Supreme Court saying that this hypothetical was not reflective of state law. And that's why the California Supreme Court got it wrong. And that's exactly what is the violation under clearly established federal law. Because contrary to what is clearly established in the U.S. Supreme Court, a state is supposed to be, a prosecution is only able to execute properly someone for a cause under the proper capital sentencing scheme. In the facts of this case, didn't the prosecutor tell the jurors, prospective jurors, the facts of this case? No, Your Honor. He talked about the first hypothetical that she gave to explain an either and a better was actually the robbery bit. And she said that the California Supreme Court… But the juror was aware of the general facts of the case. I believe the prosecutor told us this is about, for example, a payback among gang members. So, I mean, if the prosecutor provided some factual background about the case itself, I'm not sure how the hypothetical would necessarily affect it. If the hypothetical, by nature, hypotheticals would be somewhat different from the facts of the case. And I don't think it's as egregious as, you know, the Armstrong case you cited. Well, Your Honor, in this case, it is from, in comparing the prospective jurors' questions, the questionnaires' answers, and the reactions to the prosecutor's hypothetical, it is clear that her hypotheticals are misleading them. Juror Gertrude W., after all, said, when she explained, when the prosecutor explained how, quote, unquote, harsh the California death penalty statute was that it would reach the getaway driver, prospective juror Gertrude W. looked at that question and said, God, I would have to see the evidence. And that's exactly what a witherspring and its progeny requires, for jurors to be open-minded and look at the evidence. But, again, the prosecutor went back to the hypothetical. And, unfortunately, when the trial court tried to correct the misleading information, the court just reminded the juror that they were talking about multiple murders, but it did not remind the juror that under California capital sentencing scheme, for an inner and a better, to be liable for the special circumstance, the estate had to prove intent. And that's... Do you have other arguments, I suppose, that helped reduce a lot of your time, or did you want to address any of your other issues? Your Honor, just to, another thing that I would like to emphasize here, this court should not defer to the trial court's findings based on demeanor, because the trial court itself asked the wrong question to the jurors. Therefore, that explanation or their evaluation of the demeanor does not even come to play, and, therefore, this court should not defer to it. That's exactly what the Supreme Court did in Gravey, Mississippi, where the Supreme Court found that the Supreme Court should not defer to the state findings of fact based on demeanors, because the state court and the trial court had misapplied clearly established federal law. Is it fair to say that Gertrude is your strongest jury exclusion argument? It is, Your Honor, but she's not the only one. I understand that there are other groups of jurors that you said were probably excluded, but is that your strongest argument? It is where it's most clearly shown, and where she reacts strongly to the misleading information. But the prosecution proceeded, I mean, and she persevered in trying to mislead the jurors, all the way to group number nine with Archer R., where, again, his questioner's answers clearly show that he would apply the death sentence when appropriate. And it was only in reaction to the prosecutor's misleading hypothetical that he looked at the question and he said, no, I would not apply the death sentence under the scheme that the prosecution was providing. And under the scheme that the prosecution was providing, under the hypothetical, that defendant was not death eligible. And that's the crux of the matter. So she went from the beginning all the way almost to one of the last groups. She persisted in trying to mislead the jurors. And, again, in her own words, it wasn't because she wanted to exclude jurors who would frustrate the legitimate state interest. She wanted to get jurors who, quote, unquote, would give her an uphill battle. And that, Your Honor, is clearly contrary to clearly established federal law. The next certified issue, Your Honor, is the IAC based on the failure to object. In the event that this court finds that we have to look at the defendant's and trial counsel's performance, clearly that performance was ineffective. The California Supreme Court itself rejects this claim based on trial counsel's conduct. And at least for different instances, it blames rather than hold the prosecution to its burden, which was contrary to clearly established federal law, the California Supreme Court blames counsel's performance at the time of trial for failing to object and for continuously allowing the prosecution to get away with stacking the deck against the defendant. So, counsel, in order for you to prevail on this claim of ineffective assistance of counsel, we have to agree with you that the hypothetical was improper, correct? Correct, Your Honor, and that it was misleading. And that because of the hypothetical, the prosecutor did not carry her burden. So, is there a circumstance where you don't prevail on the first certified issue, but you do prevail on the second one? You mean in instances with ISEA where they underlined this? If you're saying, that's what I was trying to figure out, if you're saying that counsel was ineffective for not rehabilitating, they have to have something, does that require them to have been misled or something like that, or is it just not rehabilitating them, even if the prosecution didn't do anything wrong? Well, Your Honor, there were instances in this case itself where the defense actually rehabilitated jurors. David, I believe it was David, who was rehabilitated and was allowed to remain as a prospective juror in this case. I guess what I'm asking is, if there was not a whimspoon problem with any of the prosecutions, you know, questions or hypotheticals, can you prevail on the second, can you prevail on your second certified issue? Yes, Your Honor. Yeah, I would argue. Oh. Yeah. I mean, in the event that there is still a witherspoon problem, but the court finds that it wasn't objectively and reasonably considered by the California Supreme Court, the court could still reach, this court could still reach the ineffectiveness assistance of counsel, because it's clear, as respondent conceded, counsel at the time had the duty to make sure that there was a properly validated, a properly qualified juror. But even if the jurors were not misled, it's your argument that there was still ineffective assistance of counsel? But the jurors were misled, Your Honor. Okay. But if we conclude that there is no wit or witherspoon problem, that the jurors were not misled, would you still argue that counsel was ineffective for failing to rehabilitate them? Your Honor, I would quote the California Supreme Court saying that, to the extent that there could have been a better hypothetical, it was the duty of counsel to clarify the issue. So, yes, Your Honor. Because the California Supreme Court itself is blaming the defense counsel for its failure to properly object. So I think that would be why the court could actually reach deficient performance and prejudice on their clearly established straight line on this project. It is the California Supreme Court itself who will blame counsel rather than hold the prosecution and the state to its burden of only excluding jurors who would frustrate the state's legitimate interest in removing jurors for a cause, not as the prosecution did remove jurors who would give her an uphill battle. Counsel, you have a couple of uncertified claims as well. In order for us to reach those, you'd have to persuade us that there is a plausible constitutional claim in those. Did you want to address those, or did you want to just rest on your briefing for now? Yes, Your Honor. Really briefly, the court should expand the COAP because it's clearly debatable whether or not there was an IAC penalty and whether or not Mr. Ochoa suffers for intellectual deficit that would make him categorically excluded from the death penalty. And I would reserve, unless the court has any questions, I would reserve my remaining time for rebuttal. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. May it please the Court. Deputy Attorney General Nicholas Webster for the state. Under the deferential Edpus standard, the California Supreme Court reasonably denied these four claims. We'll touch first on the Whitwaterspoon issues that were raised here. All seven jurors that were discussed by Ochoa expressly stated here that they could not impose the death penalty in this case or they could not impose the death penalty in general. Ochoa tries to undermine those statements by pointing to two hypotheticals that the prosecutor used to explain the theories of felon murder and aiding and abetting, and those are guilt theories. The problem with that argument is that they were actually, as this Court has suggested, accurate statements of California law, and the United States Supreme Court has never disallowed, clearly disallowed, the use of hypotheticals for exploring a juror's beliefs about the issues. Now, counsel, you say they're accurate statements, and you said they're guilt as far as guilt. Are they accurate statements insofar as accurately describing what could constitute aiding and abetting and felony murder but not necessarily, at least in one circumstance, what would merit the death penalty for felony murder? Is that your position? They were not discussing the death penalty at all, Your Honor. So your answer is yes, then, that they're not necessarily accurate if you were to indulge the idea that they're just supposed to be describing what you would get the death penalty for under… Yes, if they were about the death penalty, then at least one of them wouldn't have been accurate, and that would have turned this… So that's why I think you're – Ochoa's counsel says they're misleading, and I think that's why they lean so heavily on the misleading concept, just because they – I guess their argument would be they're accurate insofar as they describe those two concepts, just like a law school hypothetical. But, you know, if you were to start talking about jaywalking or something, you know, during a case where the – you know, has capital punishment possible involved, and some juror gets in his or her head that, oh, my goodness, I didn't know California gives a death penalty for jaywalking, and then, you know, kind of set back by that and just can't really get over that. So there's no way I can impose a death penalty for jaywalking. I mean, that's extreme. But that seems to be the kind of their – the state's position. So what is your response? Not jaywalking, but that, you know, if you're talking about these other things in a death penalty case, it could be misleading because you give the wrong impression to the jurors that that is, in fact, what we'd be asking you to impose a death penalty for. What is your response to that? So these were not misleading because they were not connected to the death penalty like your hypothetical you just posed was. In that hypothetical, it was talking about jaywalking and then connecting that directly to the death penalty. That did not happen here. The prosecutor was very clear, I'm going to give you some hypotheticals about theories of guilt, not about whether we can impose the death penalty. Didn't the state court judge at least find it potentially deceptive and actually chastise the prosecutor to not use that hypothetical anymore? No, Your Honor. What the state court judge stated was that I – it wasn't actually about the hypotheticals at all. It was about I want to make sure they get the full picture. Make sure you talk about the multiple murder special circumstance and the felony murder special circumstance. So it actually really wasn't about the hypotheticals when the court was discussing that we want to make sure that the jurors get a full picture here. And I want to – But if it was in the context of determining whether or not the jurors were death qualified, so to speak, why wouldn't that be the impression that was given by the hypothetical? Well, Lloydere isn't just about death qualification. It's also can they follow the law as to the theories of guilt. So it was entirely possible that they were going to believe that the Castro murder, the robbery, was an accidental shooting. They might not believe, or they might not come to the same conclusion that the prosecutor did, that this was going to be more like a second-degree implied malice murder shooting rather than accidental. But weren't they excused because they wouldn't be able to impose the death penalty? They were. And so that was the point of the hypotheticals, at least in their view, led them to become not death eligible. So it was about the death penalty. Well, that's a Choas theory, but there's really no connection between the hypotheticals and the death penalty. So let's look at Gertrude Billiard. She's a great example of this. The hypotheticals occurred while after the hypotheticals occurred with the prosecutor saying, these are hypotheticals about theories of guilt. Eight pages later, when the prosecutor was discussing the special circumstances, that's when Gertrude W. made her statements that, geez, I don't know if I could impose the death penalty on someone for felony murder. So there was no connection. And for her, there was a connection in her mind because she said she linked felony murder and the death penalty. Gertrude W. was expressly asked, could you impose this, could you follow the special circumstance rule about felony murder? That was what her response was to that question, not to the hypotheticals. And the hypothetical explained what felony murder was. So in her mind, the explanation for what felony murder was carried forward to the question about whether or not she could impose the death penalty for felony murder. How else would she make the connection unless she was given the hypothetical about it? Your Honor, I disagree because those hypotheticals, the prosecutor was clear these are not the facts of the case. So she wouldn't believe that these are the facts. What was the point of giving the hypothetical if not to inform the jury as to what its duty was or what it was to consider? It was to show the theory of law, the idea of felony murder, which is foreign to jurors often. And it was to show that for a felony murder conviction, I don't need to show premeditation is what she said. And I really want to talk about Gertrude W. because that was, as the Children's Council has stated, what they consider their one of the strongest jurors there. Can I ask a question? I think Judge Lee asked that your cousin counsel would. I thought I remembered that they had kind of given an overview of the facts of the case. Was that before? And maybe that was different for the different groups of jurors, but for the first group, which I think was Gertrude's group, was that before they did all of this and they gave an overview of what exactly happened? Yes. In most of these cases, both the prosecutor and the trial court explained the special circumstance and what actual special circumstances. They didn't use the actual facts of the case. Before any of the explanation of the law, was there an explanation of the facts of this particular case? Both trial counsel for Etrella and the court did not want specific facts to be given, but there were general facts given about these cases, Your Honor, including the real special circumstances that were being alleged. So for Gertrude W., if we go to her questionnaire, far before the hypotheticals, she stated that she believed in the death penalty for premeditation murders, and she believed that if someone killed without premeditation, they should spend the rest of their life in jail. So she was already showing substantial impairment, not conclusively, but she was already signaling that when it comes to the felony murder special circumstance, which doesn't need a showing of premeditation. Then when she was asked about the felony murder special circumstance, she stuck with that, and this is far after the hypotheticals. She said, gee, it would be really hard for me to agree to that. And when the court later pressed her as to, well, there's also a multiple murder here, she said, I can't impose the death penalty in this case. So there's really no connection between the hypotheticals and the death penalty. And as this court was saying, they are accurate statements of California law, and Ochoa can't really explain how accurate statements of California law here have so poisoned the minds that we can't trust what these jurors are expressly stating. In all fairness, the opposing counsel says they are not accurate statements of California law. That's true, Your Honor. But as the California Supreme Court held, and they're the ultimate arbiter of what California lies, it was correct statements of California law. But the California court also said if there was any correction that was to be done to the hypotheticals, it should have been done by defense counsel. Why doesn't that support the IAC claim? Your Honor, that is a very vague statement. If there was any, if it could have been more accurate, it was their ability, it was their duty to correct it. But that doesn't say that it was inaccurate. It just says that if you wanted more details to be put in, you could have done it. But why doesn't that support an IAC claim? Because it doesn't make any sort of finding. It just says it's possible if it could have been more accurate, then you could have done something. So it's really speculative what exactly that means. I mean, there's no finding. No, but your argument, and I was trying to think about this, that there's some sort of like, so there would be an actual inaccurate statement, and then there's a statement that's obviously not inaccurate, but there's also some space in between those two where your opposing counsel might have a duty to try to respond, but you're not, but they don't, they're not necessarily fixing something that's inaccurate in the sense of like constituting legally inaccurate, but something they could make a better further claim. Is that how you're reading that? I think that's correct, Your Honor. There's nothing, there was nothing inaccurate here to fix. But if you wanted to provide more details to the jury, which the counsel said they did not, well, they could have. If we turn to the ineffective assistance of counsel claim that's related, there was no deficient performance here for declining to object, because they were accurate statements of California law, and they weren't even closely connected in time with the juror's statements that they could not impose the death penalty. Nor was it ineffective and deficient performance to decline to rehabilitate, because these jurors all made express statements showing substantial impairment. And on the fact that I think the question that Judge Walsh had asked, I mean, the court did warn the prosecutor at some point, I think maybe in the second group, and got a little off in asking the jurors if they'd return a death verdict in a felony murder case. So I think it feels like the court at least was getting the vibe. You're saying that there was quite a distance between the discussion of these, what you're saying are these accurate statements of California law and the discussion of whether or not you could impose a death penalty. And so the jury would have known that those were kind of two different things. One is just seeing whether you could follow the law and finding guilt. But it looks like maybe the court was getting a little worried that they were getting mushed together. Would you agree with that? I disagree, Your Honor, based on what the court was saying there. So the first time the court talked to them about it, they said, we were talking about felony murder, but I don't want them to forget about the multiple murder special circumstance. It wasn't a talkie. The court wasn't addressing the hypotheticals there. It was addressing, make sure they're getting a full picture of the special circumstances involved, not just felony murder. And then the court talked about it another time about getting the full picture, and that time. So your understanding of when the court says, I don't want all those jurors on felony murder questions when they're not considering the second murder picture, you're being asked the court saying, maybe the juror was not willing to follow the felony murder, but was willing to convict on the second murder for death penalty. Then I would not feel like I needed to excuse that juror for cause. I think so, Your Honor. We do know that the court wanted to do, if I'm understanding your question correctly, the court wanted to make sure that the jurors had all the information, and the court even said, I'm not going to let any juror be excused if they don't have a full picture of the case. So just to be clear, could you impose the death penalty for the felony murder alone here or not? I'm sorry, what's the question? Under California law, could the death penalty be imposed for the felony murder alone? Yes, Your Honor. And it could be imposed for second murder also. There's two different ways you can get to the death penalty. So it just seems weird that the district court would be saying, maybe even if this juror is kind of demonstrated that he or she can't impose the death penalty for one reason, that would be allowed under California law. If we could at least find out whether that juror would impose it for the other reason, we'll leave that juror on that. That would be a little odd because, you know, the jurors have basically, you know, jurors say, I can't follow the law over here, but I might be able to follow the law over here, and so we'll leave them on the panel. And that seems a little odd enough to be worth it. I understand what you're saying, Your Honor, and I agree. It is a little strange to me as well, but the court could have reasonably been thinking, you know, I want to cover all my bases and be as thorough as possible and make sure that they understand what's going on. But to be clear, that's the way you're reading this? That's the way I read it, Your Honor. So counsel, the California Supreme Court said, The trial court properly exercised its broad discretion in allowing the prosecutor's ordeal. To the extent a more accurate characterization of the case was possible, defendant had the opportunity to provide it. The trial court correctly found defendant had waived any challenge to the prosecutor's questioning by failing to offer a timely objection. Why couldn't that be a basis for ineffective assistance of counsel? That language by the California Supreme Court. Because there's no finding that these were inaccurate. There's just a finding that if it was inaccurate, you could have done it, but because you didn't, you couldn't explain it. But it said that the defense counsel waived any challenge. So a waiver of a challenge to the questions forecloses any possibility of getting relief on those. That's true, Your Honor, but there was, as we stated, that these were accurate statements of California law. There was nothing to object to. So deficient performance-wise, there was no deficient performance here. There's nothing to object to. And there's also no prejudice here, as I've stated. There's no connection between the hypotheticals and the statements. And, Archula, it's speculative whether these jurors could have been rehabilitated, and it would have been a very difficult tightrope walk, if we're talking about the performance standard, to push these jurors toward being able to impose the death penalty now, but not pushing them so far that they would actually impose it. Is your position that as long as the hypotheticals is accurate, there can be no violation? Or is it the hypothetical was accurate, plus if you see all the other contexts, there was no violation? As long as those hypotheticals were accurate, there can be no violation here, Your Honor. Maybe in another case where the facts are very different, but here there's just no indication that those hypotheticals were misleading these jurors. If I disagree with you regarding the misleading nature of the hypotheticals, do you lose? So if you find that the hypotheticals – no, Your Honor. I still think that the California Supreme Court could determine that the hypotheticals, even if they were somehow misleading, can it show a show that they were the cause of these expressed statements of impairment? And we also have the court being on the ground, listening to the jurors, watching their body language, and being able to judge if those statements of impairment were actually genuine, and how they answered the questions is also relevant. So even if they weren't perfect, these hypotheticals, I'd still say that the California Supreme Court could reasonably conclude, and that is the deferential standard we're in, that everything – that they were substantially impaired. To very briefly touch on the final two issues, the uncertified issues, a toll makes an ineffective assistance of counsel claim at the penalty phase, but this was actually the – Yes, Your Honor. The question that we asked, if you're opposing counsel, is there a way that they can win on the second certified claim but not win on the first certified claim? In other words –  I don't think so, Your Honor. But is there like sort of enough play in there that the state didn't – I guess especially under EPA, that the state did not mislead enough to be able to have a successful claim on the first one, but counsel just sat on their hands and didn't rehabilitate when they could have rehabilitated, and that was an effective assistance. So not rehabilitating, taking a hypothetical that's so misleading and bringing it back, but rehabilitating in some other sense. So they could – if this Court rejects the first argument, it would be very, very difficult for them to win on the second argument. I suppose theoretically they could win on the concerns about rehabilitation, but especially if there's nothing wrong with the voir dire, we reject the first argument, well then they may very express statements that they could not impose the death penalty in this case. That makes rehabilitation very difficult and a very difficult tightrope to walk, suggesting that there's no deficient performance. So turning to the first uncertified claim, Chola raises ineffective assistance of counsel at the penalty phase, but this was – the California Supreme Court could find this was a reasonable investigation. The counsel for Chola hired an investigator who interviewed 12 witnesses and close friends and family, teachers, and then hundreds of pages were compiled concerning Chola's childhood background, his education, his criminal history. All of that was provided to a USC professor of psychiatry who also interviewed Chola for over four hours and gave him a battery of tests and then testified consistent with all that information that Chola was a child in a loving home, but there was a serious lack of supervision and support. He was an unsophisticated child with low IQ, and thus he got sucked into gang life. So this was a thorough investigation. It's actually very similar to the case that I raised in the new authority letter, the Lester of Chola case, in that here is a thorough investigation, and what their argument really is, well, they should have done even more, but there comes a point when you have a complete background here that the California Supreme Court could reasonably say this was adequate. I think opposing counsel focused in her brief remarks on the intellectual disability, but your response is that enough was done on that specific component of the investigation. So what her argument really is is a disagreement about what experts should have been used. There is no disagreement about Dr. Maloney was a qualified expert. He testified hundreds of times both for the prosecution and defense. He was known to the defense bar at the time, and he met with a Chola for he was given a comprehensive background, based on all that investigation. He then conducted his own over four-hour interview with Chola with a battery of seven tests. This was a reasonable view into his mental health, and the fact that Chola now has other experts that he would have preferred, that's not a basis for showing ineffective assistance. Did I ask you a question that relates, I think, to the second of the two claims, the certified claims and then also both your uncertified one, which is the Pramathesha case versus whether the California Supreme Court decided on the merits. What do you think the state of the law in our court is on that? I think it's the Nunez case that said that it was not a decision on the merits, and the California Supreme Court does something like what happened here. And then you've got Ann Holster that sort of seems to have at least implicitly rejected that. But I don't know if we've ever said that Nunez has been overruled. And I was reading the Lester Chola case that I think the state provided to us, and it seemed to me that it sort of implicitly seemed to say that the California Supreme Court in that case had decided on the merits when it summarily affirmed. But what is the state of the law in the Ninth Circuit on that? Your Honor, as far as I am aware, a summary denial is exactly a decision on the merits. That's how it's been treated. Is Nunez just no longer law? Your Honor, I'm sorry. I'm not very familiar with Nunez. I'm sorry. I can't comment on that. It was a 2003 case where it said the state court's decision was objectively unreasonable because the court had made factual findings when it claimed to be determining prima facie sufficient. So it relied on the fact that these kind of decisions are not a decision on the merits. But your view is that it's clearly established that in the Ninth Circuit that a decision like in this case, where the California Supreme Court summarily affirms, that's a decision on the merits. That's how I understand it, Your Honor. And, unfortunately, I'm not very familiar with that Nunez case. So, yeah. Maybe it's Nunez. I don't know. N-U-N-E-Z. Oh, okay. That's probably Nunez. I don't know. To then touch briefly, I guess, on the last uncertified issue here, Your Honor, Achola claims he's intellectually disabled such that he does not qualify for the death penalty under Atkins. But the record, again, belies this contention. His IQ scores don't typically fall in the range we associate with intellectual disability. His grades fluctuated. He went through second grade on, not in special education classes, and only really fallen off when he became more integrated into the gang, suggesting that his drop-off in grades was, in large part, due to a lack of interest. His own expert at the time of trial testified that the, quote, bottom line is he's not intellectually disabled, and even his post-conviction experts never declared that he's intellectually disabled. Thus, the California Supreme Court could reasonably find he didn't meet the Atkins qualifications, especially under California's conception of how to apply Atkins. For these reasons, Your Honor, the California Supreme Court reasonably rejected the four claims, and the lower court's judgment should be affirmed. Thank you. Thank you, counsel. Thank you. Your Honor, there is no doubt that the prospective jurors understood the prosecutor speaking as to the special circumstances. All the prosecutors received questionnaires. Right before the questions about death penalty, they had instructions about what they would have to do in order to find the defendant and actually to reach the death penalty case. The questionnaire instructions told them that there were going to be special circumstances of that, and that they were going to be asked questions about their stand on the death penalty in regards to the special circumstances. There is no question that the prospective jurors understood that. There is also no question that the prosecutor herself led them to believe that she was talking about special circumstances. She described erroneously whether an 18-and-a-better who had not been the shooter was eligible to the death penalty. Contrary to state law, at the time, only if intent was proven. In order, when she explained the 18-and-a-better, she actually used her felony murder scenario when she talked about the robbery of the bank. It is no coincidence that for the same key scenario, the same hypothetical, she used the bank robbery felony murder circumstance. For a child's counsel to rehabilitate the jurors or prospective jurors, at least implicitly, the trial counsel would have had to emphasize that the facts of this case are actually much worse than the hypothetical, that his actions are worse. I mean, isn't that maybe his counsel decided, you know, you're trying to thread the needle here, and I'm not going to go that route. That's actually kind of contradicted by the record, but because trial counsel properly rehabilitates at least one juror, David, and it's also contrary to clearly established federal law when the Supreme Court rejects that premise and actually when they reject judges, I believe it was Stephen's dissenting opinion as to whether or not, concurring the judgment, as to whether or not trial counsel had had a strategic decision not to rehabilitate. That's the controlling opinion, right? Correct, but the controlling opinion actually rejects that assumption, that rationale. So the actual wit case does not, they actually talked about not talking about trial counsel's performance because what would happen a day during what year, but it does, it actually rejects that rationale. Counsel, doesn't that cut both ways, though? If he rehabilitated one juror, doesn't that lend credence to the argument that he made a strategic decision not to try to rehabilitate the others? No, Your Honor, he was actually ineffective, and that supports our ineffective assistance of counsel claim. Right, right, but why wouldn't it also be reasonable to conclude that he decided there was one juror that he could rehabilitate, but the others he could not rehabilitate? Why isn't that a legitimate strategic decision? And that's why, Your Honor, we should have a unification of hearing as to that IAC claim, which the California Supreme Court did not provide counsel. Well, you don't have to have a hearing to determine whether or not something is a strategic decision if you can look at the record and make a reasonable inference that it was, and I think a reasonable inference could be made that if he chose to rehabilitate one, he deliberately chose not to rehabilitate the others. But, Your Honor, and then it wouldn't have been a reasonable strategic decision, and I would point the court to Griffith v. Harrington, where under D, this court actually found that trial counsel's failure to object when he should have was actually deficient performance and detrimental in another type of a scenario because that barred that defendant from ever seeking relief in the underlying claim. And that's Griffith v. Harrington. In terms as to Your Honor's question about Nunez, Brownfield v. Cain is actually right on point. It is a case about intellectual deficit where the person had made, the defendant had made, the equivalent of a prima facie case that he had intellectual deficit, and the state court had denied a hearing. The Supreme Court found that the defendant in that case had overcome, it was procedural hurdles, because he had made the sufficient showing that, and therefore he was entitled to an evidentiary hearing to actually marshal the facts to ultimately prove his claim. It is no coincidence that Brownfield v. Cain actually cites to N. R. E. Hoffer, which is a California case, as to what is the sufficient basis for an evidentiary hearing. And how is it your argument that the evidence that was submitted previously regarding his intellectual capability was deficient? No, Your Honor. I'm arguing that he made a sufficient showing by which he should have gotten an evidentiary hearing. Are you saying that he originally made a sufficient showing? No, Your Honor. So that's what I'm asking you. Are you saying that the original showing was deficient? Yes, Your Honor, because even though his trial preceded Atkins, counsel could have made, for mitigation purposes, could have shown, and it's not that we're arguing that he chose the wrong expert. That's not the case at all. What we're arguing is that counsel missed the red flags that showed that Ochoa could not even brush his teeth, and other kids were calling him grease teeth. Once counsel chose the expert, wasn't he entitled to rely on the expert's conclusions? Your Honor, there is a saying, garbage in, garbage out. Counsel did not inform Dr. Maloney of all these issues that he should have been aware of because there were red flags pointing to that. He didn't tell Maloney because he himself didn't know that Ochoa and his sister would show up to his school reeking in urine because they didn't even know how to bathe themselves, that he would fake that he was reading when other kids his age were able to read and make up stories as he was going down the line reading the book. So is it your position that the expert who was retained by the defense was unable to discern all of this through his interviews? Your Honor, he wasn't provided the information because the trial counsel didn't have the information, because the trial counsel had not conducted a thorough investigation about his client. And this was not as aggravating of a case as the state made this case to be. Ochoa, after all, was the only one of his cohort against whom the state sought the death penalty. Counsel, can I ask you, just to follow up on the prima facie, Ochoa, what is your position on for the second claim, the second certified claim, and the two uncertified claims? Your position is that the California Supreme Court did not decide those on the merits? Your Honor, we made a prima facie assuring that should have granted us an evidentiary hearing at the lower court. But that's a different question. Yeah, yeah, I think it is. I'm asking whether or not, you know, we don't apply the same sort of epidefference if it wasn't a decision on the merits. And what is your position on those claims, whether or not the California Supreme Court's decision was a decision on the merits or under the Nunes case? So I think we're talking about a different kind of thing here. I think it's still under the Nunes case, because it's a question of the burden. Your Honor, how much do we have to show that the Supreme Court unreasonably applied the law? We don't have to show that we prevail on the ultimate merits of the claim, because the California Supreme Court in Nunes, as the court in Bromfield, made the erroneous determination that we hadn't even made enough of a showing that allowed us an evidentiary hearing. So it's kind of, for lack of a better word, a quasi merits finding. So, just so I understand your argument on this point, are you arguing that the California Supreme Court did not decide this case on the merits? On the ultimate question, Your Honor, because it decided that we hadn't made enough of a showing to make a primary hearing. Is your answer yes or no, the Supreme Court did or did not address this issue on the merits? And I'm hesitating, because the way the question is issued, right? Let me ask you this. Have you made the argument that the California Supreme Court failed to address this issue on the merits? Have you made that argument before? Your Honor, what we're making there... Did you just answer that precise question? Have you made the argument that the California Supreme Court failed to decide this issue on the merits? No, Your Honor, but I would point this court to Bromfield v. Cain, where the Supreme Court found that because the state court had decided the issue at a lower threshold of a prima facie case, the defendant in that case had overcome the procedural barriers for habeas relief. Because the court, the Supreme Court, the California Supreme Court in this case, unreasonably determined the facts under D-2. Give a yes or no answer now. Are you arguing here today that the Supreme Court failed to decide this case on the merits? No, Your Honor, I'm arguing that in making that determination, it unreasonably applied clearly established federal law under D-2 as to the IC claim and D-1. All right, thank you. If there are no further questions, thank you to both counsel for your helpful arguments, and it's just like it is submitted for decision by the court, and we are adjourned.
judges: RAWLINSON, LEE, VANDYKE